**Rachel BLANK, et al., Petitioners, Respondents,**

**v.**

**INDEPENDENT SCHOOL DISTRICT NO. 16, Appellant.**

**No. C9–85–212.**

Court of Appeals of Minnesota.

Aug. 6, 1985.

Review Granted Oct. 24, 1985.

William F. Garber, Peterson, Engberg & Peterson, Minneapolis, for respondents.

Patricia A. Maloney, Knutson, Flynn & Hetland, P.A., St. Paul, for appellant.

Heard, considered and decided by LANSING, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Respondents Rachel Blank and Kent Charron appeal the school board's resolution adopting a hearing examiner's recommendation which placed them on unrequested leave of absence. On appeal the district court substituted its findings for those of the hearing examiner and ordered the school district to reinstate respondents with full back pay. We affirm in part and reverse in part.

## FACTS

Independent School District No. 16 and the Spring Lake Park Federation of Teachers, the teachers' exclusive bargaining representative, negotiated a policy for placing teachers on unrequested leave of absence in inverse order of seniority in subjects in which they are qualified. The policy was authorized by Minn.Stat. § 125.12, subd. 6a (1984) and incorporated as Article XV of the collective bargaining agreement.

Seniority is determined by an annual listing which ranks employees by date of employment and describes subject matter areas in which they are qualified. The agreement defines a "qualified" teacher as one:

who is licensed to teach full time in the subject matter category and has successfully taught such subject matter category with the * * * school district.

The agreement defines "subject matter" as "such categories as are determined by the State Department of Education for licensure purposes."

On the seniority list for the 1982–83 school year Rachel Blank, a teacher in the school district, was given seniority number 203 and her qualifications were listed as "Visual Handicapped K–12." She is also licensed in elementary education, although she has never been assigned to teach it. Kent Charron, another teacher in the district, was given seniority number 149. His qualifications were listed as in-school suspension, aide to principal with only teacher certification required, and administrative assistant with only teacher certification required. He is also licensed in other areas which he has not taught in the school district. Neither Blank nor Charron objected to the seniority list, and the school district approved it in February 1983.

In May 1984, Blank and Charron were placed on unrequested leave of absence because of financial limitations and declining enrollment. They requested a hearing. At the hearing, Blank argued that she was "qualified" to teach elementary education because she had "successfully taught" her vision students core elementary education subjects. Thus, she argued

she could bump an elementary education teacher with less seniority. Charron argued that he was "qualified" to bump a less senior dean of students or an assistant principal because he had "successfully performed" the same duties under a different job title.

The hearing examiner, hired by the district, found that Blank was not qualified to bump an elementary teacher and that Charron was not qualified to bump the dean of students or the assistant principal within the meaning of the collective bargain agreement.

The school board adopted the hearing examiner's proposed findings and conclusions and placed Blank and Charron on unrequested leave. The teachers obtained a writ of certiorari to the district court, which found that (1) Blank and Charron were not bound by the seniority list because the list did not conform to the collective bargaining agreement and (2) they were qualified for the other positions held by less senior teachers. The court ordered them reinstated with back pay. The school district appeals.

## ISSUES

1. Does the failure of Blank and Charron to challenge a seniority list prior to being placed on an unrequested leave of absence preclude them from raising the issue of their qualifications at the leave of absence hearing?

2. Are Blank and Charron "qualified" for other positions held by less senior teachers?

3. Did Blank fail to mitigate her damages so as to bar her from full back pay?

## ANALYSIS

■ A school board's decision to terminate a teacher may be overturned if the decision was "fraudulent, arbitrary, unreasonable, not supported by substantial evidence on the record, not within the school board's jurisdiction, or is based on an erroneous theory of law." *Schmidt v. Inde-*

*pendent School District No. 1*, 349 N.W.2d 563, 566 (Minn.Ct.App.1984).

## I

The school board contends that Blank and Charron are precluded from disputing the qualifications listed on the seniority list because they failed to challenge the list as provided in the master agreement. The agreement provides:

> *15.05 Establishment of a Seniority List:*
>
> (A) The school district shall cause a seniority list (by *name, date* of employment, *qualification and subject matter* or field) to be prepared from its records. It shall thereupon post such list in an official place in each school building of the district no later than December 15 of each year.
>
> (B) Any person whose name appears on such list and who may disagree with the findings of the school board and the order of seniority in said list shall have twenty (20) working days from the date of posting to supply written documentation, proof and request for seniority change to the school board.
>
> (C) Within ten (10) working days thereafter, the school district shall evaluate any and all such written communications regarding the order of seniority contained in said list and may make such changes the school district deems warranted. A final seniority list shall thereupon be prepared by the school district, which list as revised shall be binding on the school district and any teacher. * * * Such * * * list shall govern the application of the unrequested leave of absence policy until thereafter revised.
>
> (D) * * * This Article shall govern all teachers as defined therein and shall not be construed to limit the rights of any other licensed employee not covered by the master contract or other master contract affecting such licensed employee.

(Emphasis added). In addition, Article XIV provides a grievance procedure which includes arbitration to resolve:

> an[y] allegation by a teacher(s) resulting in a dispute or disagreement between the teacher employee(s) and the school district as to the interpretation or application of terms and conditions of employment insofar as such matters are covered by this agreement.

 A teacher should normally pursue an objection to a seniority list through the grievance procedure established by a collective bargaining agreement. *Ellerbrock v. Board of Education*, 269 N.W.2d 858, 862–63 (Minn.1978). A teacher may be bound by the list if he or she had the "opportunity" to challenge a seniority list but chose not to. In *Jerviss v. Independent School District No. 294*, 273 N.W.2d 638 (Minn. 1978), the court said:

> If plaintiff had been able to challenge her seniority placement prior to being given notice of termination, * * * requiring her to use the grievance procedure would be reasonable. Plaintiff, however, apparently was unaware of her seniority placement until she received notice of her placement on unrequested leave of absence. * * * [W]here there has been no apparent opportunity to challenge seniority placement prior to a notice of placement on unrequested leave of absence, the teacher may raise that issue at the hearing on her unrequested leave of absence.

*Id.* at 647.

 The teachers argue, and the trial court found, that they are not bound by the seniority list because it does not conform to the format required by the collective bargaining agreement. We agree.

The agreement requires a list showing "name, date of employment, qualification and subject matter or field." The seniority list here included name, date of employment, and qualification only. The teachers had no reason to dispute the seniority list as prepared.

## II

The agreement precludes placement of a teacher on unrequested leave of absence if there is a less senior, qualified teacher in the same field or subject matter. Qualification is defined as licensure and successful teaching of the subject matter. The district argues that teachers have "successfully taught" only those courses they have been *assigned* to teach, regardless of their actual duties. We disagree.

■ The school district's view that "successfully taught" means only courses teachers have been assigned ignores the actual job functions and centers upon assignments or titles and is nothing more than form over substance. It is unacceptable to allow the school district to rely on assigned job titles rather than job content. A teacher who has actually performed job duties has successfully performed them. Nowhere in the agreement is there a limitation that jobs "successfully taught" include only those jobs which are actually assigned. Instead, it is only required that the teacher teach the subject matter of the course. Use of the modifier "successfully" does not necessarily require an evaluation of the teacher's performance.

The school district argues that *Peck v. Independent School District No. 16*, 348 N.W.2d 100 (Minn.Ct.App.1984) controls the disposition of this case. In *Peck*, this court interpreted the same unrequested leave policy to mean that a music teacher who was listed as being qualified for "Music K–12" on the seniority list could not bump a teacher of English as a Second Language (ESL), even though any licensed teacher may teach ESL, because she was not qualified in that subject matter. The court said:

> [The music teacher] has never taught ESL. She is not listed on the final seniority list as being qualified in ESL. Her right to teach an available subject as well as her exercise of seniority over another teacher under these circumstances is contractual.

*Id.* at 103. The decision in *Peck* rests in part on the ground that she had *never* taught ESL and so could not have "successfully" taught it and in part on the ground that the seniority list's description of her qualifications is binding. The present case is distinguishable because both Blank and Charron *have* taught the subject matter of the other positions.

■ Charron's reinstatement, however, fails on other grounds. The negotiated agreement expressly limits teachers bumping rights to positions covered by the agreement. Paragraph 15.03(c) provides:

> Teachers placed on unrequested leave shall be done in inverse order of seniority in the field and subject matter employed in positions *covered by this Agreement*. No teacher shall be placed on unrequested leave if there is any other qualified teacher with less seniority in the same field and subject matter employed.

(Emphasis added). The position of "student dean" is not covered by the teachers' collective bargaining agreement. We are unimpressed with Charron's argument that the phrase "positions covered by this Agreement" is limited only to the first sentence dealing with layoffs. The paragraph as a whole, along with other clauses in the agreement referring to "positions covered by this agreement," indicate an intent to limit both layoffs and bumping to positions covered by the agreement.

■ Because Blank actually taught "core elementary education," however, she qualifies as having "successfully" taught it. The position is covered by the agreement and it is not disputed that Blank is licensed in this area. She must be reinstated.

## III

The district court ordered the teachers' reinstatement with full back pay. The school district argues that Blank's back pay must be reduced because she rejected a half-time position offered by the school district and thus failed to mitigate her damages. The school district requests a remand for an evidentiary hearing on this issue if the reinstatement is affirmed.

The prima facie measure of damages is full back pay. *Soules v. Independent School District No. 518*, 258 N.W.2d 103 (Minn.1977). The school district has the burden of proving a failure to mitigate, and it has not done so. *Id.* Moreover, the school district failed to raise this issue below; it is not properly raised on appeal.

## DECISION

Blank and Charron were not precluded from disputing the seniority list at the unrequested leave hearing. Blank is entitled to reinstatement with full back pay. Charron is not entitled to reinstatement because he is attempting to bump a position not covered by the collective bargaining agreement.

**Affirmed in part and reversed in part.**

LANSING, Judge (dissenting).

I respectfully disagree with the reasoning in the majority opinion that allows the seniority list dispute to be raised at the unrequested leave hearing.

The majority affirms the trial court's conclusion that Rachel Blank and Kent Charron are not bound by the seniority list because it does not conform to the format required by the collective bargaining agreement and because the teachers had no reason to dispute the list as it was prepared. The collective bargaining agreement requires a list showing "name, date of employment, qualification and subject matter or field." The seniority list here shows name, date of employment, and qualification, but does not have a category entitled "subject matter or field." However, the agreement defines a "qualified" teacher as one who is licensed to teach full time in *the subject matter category* and has successfully taught *the subject matter category.* Thus, the definition of "qualification" by necessity includes the subject matter.

Even if the list technically fails to conform to the bargaining agreement, the teachers have failed to demonstrate any prejudice resulting from the format used. They knew that the seniority list contained the areas in which the school district considered them "qualified" within the meaning of the agreement, and they knew the list would be used for unrequested leave purposes. In fact, in a prior year Charron successfully disputed his qualification as it appeared on the list. While the majority writes that the school district's definition of "successfully taught" (as meaning only subjects the teachers had been assigned to teach) elevates form over substance, the majority's treatment of the seniority list issue is subject to the same criticism.

A dispute concerning specific contractual provisions is a matter for arbitrators, not the court, if it is clear the parties intended to arbitrate the controversy. *See Berger v. Independent School District No. 706*, 362 N.W.2d 369, 372 (Minn.Ct.App.1985). The parties here agreed to have a final and binding seniority list, and they agreed on procedures, including arbitration, to resolve any dispute as to the "interpretation of terms and conditions of employment covered by the agreement." They did not negotiate a definition of the term "successfully taught." If the teachers wished to challenge the school board's interpretation of that term, they should have invoked the negotiated grievance procedure when the seniority list was posted, and their failure to do so precludes them from raising the issue at the unrequested leave hearing. *See, e.g., Ellerbrock v. Board of Education*, 269 N.W.2d 858, 862–64 (Minn. 1978); *Jerviss v. Independent School District No. 294*, 273 N.W.2d 638, 647 (Minn. 1978). I would reverse and reinstate the school district's decision to place both Blank and Charron on unrequested leave of absence.